UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMMANUEL PINA,                          *
                                        *
            Petitioner,                 *
                                        *
      v.                                *          Civil Action No. 19-cv-12583-IT
                                        *
STEVEN SILVA,                           *
                                        *
            Respondent.                 *

MEMORANDUM & ORDER

September 2, 2021

In 2011, Petitioner Emmanuel Pina was convicted of two counts of murder in the first

degree for the 2009 shooting deaths of Jovany Eason and Manuel Monteiro. Petitioner was

sentenced to life in prison. Now before the court is Emmanuel Pina's Petition for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 [#1]. Petitioner argues that his imprisonment is in

violation of federal law on three grounds. First, Petitioner claims that he was deprived of two

peremptory challenges due to a mistake by the trial court judge. Second, Petitioner claims that

the trial court judge failed to properly instruct the jury. Third, Petitioner claims that he was

unduly prejudiced by an officer's testimony identifying him as the suspect from surveillance

video of the shooting. Because the court concludes that none of these claims provide grounds for

habeas relief, the Petition is DENIED.

I.      FACTUAL AND PROCEDURAL HISTORY

For the purposes of this habeas proceeding, Petitioner has not challenged the accuracy of

the underlying facts and the court adopts the following factual background as set forth by the

Massachusetts Supreme Judicial Court ("SJC"). See 28 U.S.C. § 2254(e)(1) ("a determination of

a factual issue made by a State court shall be presumed to be correct").

In the early morning hours of August 2, 2009, an argument broke out at a bar and restaurant on Hancock Street in the Upham's Corner neighborhood of Boston. The argument started shortly after [Pina's codefendant] and a companion entered the bar. In the entranceway, the codefendant greeted another patron with a hug, and then said, "I don't understand why you hang with the Draper Street niggas." The victim, Jovany Eason, who was friendly with people from the Draper Street neighborhood, took exception. Eason approached the codefendant, and they exchanged angry words. A bouncer moved in and separated the two men. The codefendant and his friend left the bar and walked away from the area; Eason did not leave.

The dispute continued inside the bar, where Eason argued with one of the codefendant's friends, Otelino Goncalves. The altercation moved from the entranceway to the rear of the bar near the restrooms. A few minutes later, the defendant, who was also a friend of the codefendant, entered the bar and headed directly to the men's restroom, where he joined Goncalves in arguing with Eason and some of Eason's friends. A fight broke out between the defendant and Eason and their respective friends. The bar owner, some of his employees, and a regular customer named Adelberto Brandao separated the combatants. The defendant was escorted out of the bar through the front door. Eason left the bar on his own accord immediately before the defendant was ejected.

The hostilities spilled out onto Hancock Street, where Eason squared off to fight Goncalves in the middle of the street. Before any punches were thrown, the codefendant walked up to Eason and pointed a pistol at him. A patron inside the bar, Joao DePina, observed the codefendant attempt to "rack" the handgun or, as the witness described it, "He was trying to get the bullet to shoot at something." Eason backed away. The defendant then grabbed the weapon from his codefendant's hand. He ran toward Eason, who was standing on the sidewalk in front of the bar, and fired. The defendant missed Eason, but the stray round, fired from a .45 caliber weapon, shattered a plate glass window near the front door of the bar and struck [Manuel] Monteiro in the chest. Monteiro, who was working a second job as a cook, had been watching the altercation on the street from inside the bar. He collapsed in the middle of the bar, and was pronounced dead by emergency medical technicians who arrived at the scene.

Outside, the defendant chased Eason down Hancock Street while firing at Eason. The two passed a community center on the corner of Hancock Street and Jerome Street, which had its own security cameras. At the three-way intersection of Hancock Street, Jerome Street, and Bird Street, the defendant ran to the right onto Jerome Street. Eason ran to the left onto Bird Street, and collapsed near the intersection shortly after he turned onto Bird Street.

2

On Jerome Street, near Cushing Avenue, the defendant encountered Timothy Santos, one of Eason's friends. Santos, who was armed with a .380 caliber handgun, shot at the defendant, who fired back. Both men fired multiple rounds; the defendant hit Santos in the leg above the knee. A friend dropped Santos off at a hospital, where he refused to cooperate with police, and told his doctors that he woke up with the gunshot wound.

Police officers found Eason lying face down on the ground near the intersection of Hancock Street and Bird Street. He had been shot in the lower back, in the upper back near his shoulder blade, and through the shoulder or upper arm. The medical examiner extracted a .45 caliber projectile from Eason's lower back; the other two projectiles passed through his body. At trial, the medical examiner opined that Eason died as a result of suffering two gunshot wounds to the torso.[fn]

[fn] Martin Lydon, a Boston police department ballistics expert, examined the shell casings and projectiles recovered from the crime scenes. He testified that the projectiles that killed Monteiro and Eason, and the projectile found on Columbia Road, were all fired from the same .45 caliber handgun. He also testified that the spent .45 caliber shell casings found on or near Hancock Street, and the cluster of shell casings found on Jerome Street, were fired from the same weapon.

Com. v. Pina, 481 Mass. 413, 415–17 & n.6, 116 N.E.3d 575, 581–83 (2019) (additional footnotes omitted).

On October 6, 2011, a Massachusetts Superior Court jury convicted the Petitioner of murder in the first degree, on a theory of deliberate premeditation, in the deaths of Eason and Monteiro, and one count of unlawful possession of a firearm. Suppl. Answer ("S.A.") 8, 67, 69, 75 [#12]. The jury was instructed on self-defense in connection with charges related to the shooting of Santos, and Petitioner was acquitted of those charges. See S.A. 71 [#12]; see also Pina, 481 Mass. at 414 n.2. On October 11, 2011, Petitioner was sentenced to concurrent terms of life for each of the two murder charges, and a concurrent four-to-five-year term on the weapons charge. S.A. 8 [#12]. Pina appealed his conviction and moved for a new trial; he subsequently appealed the denial of the new trial motion and the SJC consolidated the two appeals. S.A. 9, 11 [#12].

The Petitioner raised five arguments in his consolidated appeal: (1) that the judge erred in not providing an accident instruction with respect to Eason's death and instructions on voluntary and involuntary manslaughter with regard to Monteiro's death; (2) that Petitioner was denied a fair trial because the judge miscalculated the number of preemptory challenges that had been exercised by his trial counsel, depriving him of two additional challenges that could have been made; (3) that the judge erred in allowing identification testimony identifying the Petitioner as an individual shown in video surveillance footage by a police officer and many others at the scene; (4) that trial counsel's failure to present an intoxication defense through available witnesses constituted ineffective assistance of counsel; and (5) that the SJC should exercise its extraordinary authority pursuant to G. L. c. 278, § 33E, and grant Petitioner a new trial or to reduce the conviction to a lesser degree of guilt. Pina, 481 Mass. at 415. On February 12, 2019, in a carefully reasoned opinion, the SJC considered each of Petitioner's arguments and affirmed his convictions. Id.

On December 23, 2019, Petitioner filed this timely action for habeas relief pursuant to 28 U.S.C. § 2254. Petitioner's Memorandum of Law in Support of his Petition [#18] raises the following three grounds: (1) that Petitioner was erroneously deprived of two peremptory challenges; (2) that it was prejudicial error for the trial court judge to fail to give an accident instruction with regard to the shooting of Eason; and (3) that photo identification testimony offered by a Boston detective was improperly admitted where the testimony's prejudicial effect outweighed its probative value.[1] Respondent has filed a Memorandum in Opposition [#21] contesting the merits of each of Petitioner's claims.

---

[1] The Petition 10 [#1] includes a fourth ground for relief not discussed in the Memorandum [#18]. Ground four contends that the Boston Police Department failed to follow its own

4

II.     LEGAL STANDARD

The court reviews habeas petitions seeking relief from state court convictions under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As to Section 2254(d)(1), "[a] state court decision is contrary to clearly

established federal law if it contradicts the governing law set forth in the Supreme Court's cases

or confronts a set of facts that are materially indistinguishable from a decision of the Supreme

Court but reaches a different result." Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012)

(internal quotation and citation omitted). Further, a decision is an unreasonable application of

clearly established law "if it applies Supreme Court precedent to the facts of the case in an

objectively unreasonable manner, such as reaching a result that is devoid of record support for its

conclusion." Id. (quotation marks and citations omitted). An "unreasonable determination of the

facts" for the purposes of Section 2254(d)(2) is one that is "objectively unreasonable in light of

the evidence presented in the state-court proceeding." Miller–El v. Cockrell, 537 U.S. 322, 340

(2003).

---

procedures in the use of a photo-array identification procedure. In considering a petition for
habeas corpus, issues adverted to in a perfunctory manner, unaccompanied by some effort at
developed argument, are deemed waived in the First Circuit.  See, e.g., Glacken v. Dickhaut, 585
F.3d 547, 551 (1st Cir. 2009); see also Lamartine v. Ryan, 215 F. Supp. 3d 189, 193 (D. Mass.
2016) (collecting cases).

Under AEDPA, an application for a writ of habeas corpus will not be granted on behalf

of a person in custody pursuant to the judgment of a state court "unless it appears that . . . the

applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.

§ 2254(b)(1)(A). Exhaustion requires that, before seeking habeas relief, a Petitioner present, or

do his best to present, the substance of a federal habeas claim "fairly and recognizably" to the

state's highest tribunal. Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997). This provides the

state the first "opportunity to pass upon and correct alleged violations of its prisoners' federal

rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (internal citations omitted).

III.   DISCUSSION

a.   Ground One: Petitioner's Two Peremptory Challenges

Petitioner argues that the trial court's failure to provide him with his full complement of

16 peremptory challenges, as provided by Massachusetts law, denied Petitioner of a fair trial.

Pet'r's Mem. 1 [#18]. The SJC described the circumstances relating to the peremptory challenges

as follows:

> The judge decided to empanel sixteen jurors. As a result, each party was entitled
> to sixteen peremptory challenges. See Mass. R. Crim. P. 20(c)(1), 378 Mass. 889
> (1979). The judge began the empanelment process by introducing the case and the
> parties, and asking the entire venire general questions, as then required by G. L. c.
> 234, § 28, and Mass. R. Crim. P. 20(b)(1). Thereafter, she brought each juror to
> sidebar for individual questioning . . . . At the conclusion of individual
> questioning, the prosecutor and the two defense attorneys were required to
> exercise peremptory challenges on any juror the judge had declared indifferent.
>
> On the final day of the three-day empanelment, the defendant exercised a
> peremptory challenge to excuse a potential juror called to fill seat number 14. The
> judge mistakenly informed defense counsel, "That takes care of all your
> challenges." At that point, the defendant had exercised fourteen peremptory
> challenges and had two remaining. Later, defense counsel stated, "It is my
> understanding, and I might be wrong, that I had two challenges left." Thereafter,
> the judge sat two jurors: juror no. 69 (seat number 16) and juror no. 80 (seat
> number 10) (to replace an excused juror).

Pina, 481 Mass. at 427.[2]

Respondent contends that Petitioner has procedurally defaulted any claim related to the peremptory challenges because Petitioner did not object when the trial court judge advised Petitioner that he had no more peremptory challenges remaining. Resp't's Opp'n 5 [#21]. The court finds this a close call, but concludes that Respondent failed to properly object.

The relevant colloquy (interspersed with the calling and questioning of potential jurors) was as follows:

THE COURT: Mr. Budreau [defense counsel], . . . that takes care of all your challenges.

[DEFENSE COUNSEL]: That's it?

THE COURT: That's it. Mr. Moss [co-defendant's counsel] has two left.

. . . .

[GOVERNMENT COUNSEL]: How many do I have left?

THE COURT: You have nine.

. . . .

[DEFENSE COUNSEL]: Your Honor, if I may for a moment. It was my understanding, and I might be wrong, that I had two challenges left. And that was Mr. Pappas and Mr. Moss, also. Maybe I'm wrong.

THE COURT: You are. I have been keeping close tally on all the challenges.

[DEFENSE COUNSEL]: Okay.

---

[2] In its opinion, the SJC noted that "there [was] no dispute" that Petitioner "was deprived of the right to exercise *two* peremptory challenges." Pina, 481 Mass. at 427 (emphasis added). Respondent disagrees and states that "[t]he Commonwealth maintained throughout the state-court proceedings that the judge denied Petitioner only one challenge." Resp't's Opp'n 6 n.2 [#21] (citing S.A. 212 [#12]). Because the court reaches the same result whether Petitioner was deprived of one or two peremptory challenges, the court does not resolve the dispute, and proceeds assuming that Petitioner was deprived of two peremptory challenges.

THE COURT: You've used five today, and that's what you came into this morning with. Mr. Moss came in with three and he used one. Mr. Pappas came in with 13 and has used (indiscernible).

S.A. Ex. 4, 62:5–17 [#12-4] (emphasis added).[3]

To the extent that Respondent contends that Petitioner was required to lodge a "formal" objection, Respondent's position is contrary to the Massachusetts Rules of Criminal Procedure. As set forth in Rule 22, to preserve a claim of error "it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court." Accordingly, even though Defendant's counsel did not object to the jurors being seated or raise a challenge for cause as to the jurors seated after the court advised counsel that he had no more peremptory challenges left, if Defendant had made known the action he sought or his objection to the court's action, the objection would be preserved.

Here, however, the colloquy between counsel and the trial court judge is insufficient to convey to the trial court judge the action he desired the court to take. While Petitioner's counsel raised to the trial court the possibility that he may have had two challenges left, his equivocation

_____

[3] Historically, Petitioner may have had to lodge an "exception" to the trial court judge's ruling that he had no remaining peremptory challenges in order to preserve a claim of error. See Com. v. Foley, 358 Mass. 233, 236, 263 N.E.2d 451, 454 (1970) (noting that exceptions to rulings must be lodged at trial to preserve claims of error since a trial judge must be allowed an "opportunity to reconsider his ruling."). However, that is no longer the rule. See Mass. R. Crim. P. 22 ("Exceptions to rulings or orders of the court are unnecessary and for all purposes for which an exception has heretofore been necessary"); see also Mass. R. Crim. P. 22, Reporter's Notes (Commenting that "the requirement of exceptions exalts form over substance in an unnecessarily ritualistic and time-consuming procedure" and "an objection by counsel or counsel's request for specific action is sufficient to indicate to the court counsel's position on any issue and that to additionally require an exception is superfluous.").

was insufficient to alert the court that there remained any disagreement with the court's counting of peremptory challenges. Accordingly, Petitioner failed to preserve the challenge.

A defaulted claim may still be considered if Petitioner can establish cause for the default and actual prejudice resulting from the alleged violation of federal law.[4] Coleman v. Thompson, 501 U.S. 722, 749 (1991). Cause to excuse a procedural default will only be found where a prisoner is impeded or obstructed in complying with the state's established procedures.  Martinez v. Ryan, 566 U.S. 1, 13 (2012). The Petition sets forth no impediment or obstruction—such as ineffective assistance of counsel—that would provide cause for Petitioner's failure to preserve this claim of error. Accordingly, the court does not reach the question of whether Petitioner has established actual prejudice. Moreover, in any event, as discussed further below, the court finds that even if Petitioner could be excused from defaulting on his claim, the claim fails to state a basis for habeas relief.

While courts have long held that peremptory challenges facilitate the selection of a fair and impartial jury, see, e.g., J.E.B. v. Alabama ex rel. T. B., 511 U.S. 127, 137 (1994), the Supreme Court has "long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." United States v. Martinez-Salazar, 528 U.S. 304, 311 (2000).

Nonetheless, a constitutional claim for deprivation of a state right to peremptory challenges may still exist where a Petitioner is deprived of rights afforded to him under state law

---

[4] In the absence of cause and prejudice, a court may still consider defaulted claims to prevent a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default"). Petitioner does not argue that this narrow exception applies.

in an arbitrary manner. Ross v. Oklahoma, 487 U.S. 81, 89 (1988). That is, "the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." Id. In Ross, the Supreme Court considered a case where state law provided a defendant with nine peremptory challenges and the defendant used one of his nine to remove a juror that the judge, improperly, failed to remove for cause. The defendant argued that his due process rights were violated as the trial court arbitrarily deprived him of his full complement of nine peremptory challenges. The Court disagreed, ruling that it was for the state to determine the purpose and manner of the exercise of peremptory challenges and under Oklahoma law there was no reversible error so long as the defendant did not have an incompetent juror forced upon him. Id. As the Court wrote, "there is nothing arbitrary or irrational about subordinat[ing] the absolute freedom to use a peremptory challenge as one wishes to the goal of empaneling an impartial jury." Id. at 90. Put differently, "it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." Id. at 89.

Here, although Petitioner was deprived of his full complement of peremptory challenges, he was provided with all that which Massachusetts law provides. Namely, the SJC has held that the purposes of the Massachusetts peremptory challenge rule are satisfied so long as "no person is seated as a juror 'against whom the defendant could claim suspected or perceived bias, and no person against whom he had exercised or attempted to exercise a peremptory challenge.'" Pina, 481 Mass. at 428 (quoting Com. v. Bockman, 442 Mass. 757, 763, 817 N.E.2d 717, 722 (2004)). Where the Petitioner has put forth no basis to question the impartiality of the jury nor any potential or articulable claim of suspected or perceived bias as to the last two jurors ultimately seated on his jury, Petitioner has not established that he was arbitrarily deprived of the protections provided to him under Massachusetts law. As a result, even if Petitioner had not

10

defaulted on his claim, the claim that he was deprived of protections provided under federal law by the trial court's error to allot him the proper number of peremptory challenges fails to articulate a basis for habeas relief.

b.  Ground Two: Jury Instructions

Petitioner next argues that the trial court judge improperly failed to provide an "accident" instruction. Pet'r's Mem. 4 [#18]. However, in Massachusetts, the term "accident" is a term of art in the context of firearm charges and is specifically limited to those cases "'where there is evidence of an unintentional or accidental discharge . . . .'" Pina, 481 Mass. at 418 (quoting Com. v. Millyan, 399 Mass. 171, 182, 503 N.E.2d 934 (1987)). Petitioner did not ever contend (nor did any fact ever suggest) that the shots that struck Eason were discharged accidentally or unintentionally.

Instead, Petitioner's assertion is that "in the gunfight on Jerome Street, defendant fired his weapon in self-defense against Santos—missed—and struck Eason." Pet'r's Mem. 5 [#18]. This theory of the case more accurately aligns with the doctrine of "transferred intent self-defense," which some courts have adopted in cases of a "shooting death of a bystander during an act of self-defense." Pina, 481 Mass. at 420 (citing W.R. LaFave, Criminal Law § 6.4, at 449 (6th ed. 2017)). For the purposes of this pro se habeas proceeding, the court therefore construes all references to an "accident instruction" from the petition and memorandum to be referring to a transferred intent self-defense instruction.

At trial, Petitioner contended that the jury should have been instructed that Petitioner would not be liable for Eason's murder if the evidence showed he accidentally shot Eason when shooting Santos in self-defense. S.A., Ex. 11, 150:1–17 [#12-11]. The prosecutor opposed such an instruction as to Eason on the grounds that there was no basis in fact for the instruction. In

support, the prosecutor pointed to (1) the Medical Examiner's testimony as to Eason's cause of death, (2) video evidence suggesting that Eason was fatal shot occurred while Petitioner was chasing Eason down Hancock Street while shooting at him, and (3) the implausibility of a stray shot hitting Eason while Eason was on Bird Street when Petitioner was shooting at Santos from Jerome Street and Cushing Avenue. Id. at 151:17–24. The trial court judge agreed with the prosecutor and declined to provide the instruction. Id. 152:13–14.

As a general matter, an allegation that a jury instruction was incorrect under state law "is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438, n.6 (1983)). That is, federal habeas courts may not grant relief simply because an instruction was technically deficient or because an instruction improperly applied state law. Id. Instead, an improper jury instruction will only raise a prospect of habeas relief where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). In the context of federal habeas relief, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly" since "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Estelle, 502 U.S. at 72 (citing Dowling v. United States, 493 U.S. 342, 352 (1990)).

Here, the trial court's discretionary determination that there was an insufficient basis in the record to call for a transferred intent self-defense instruction as to the Eason murder charge does not rise to the level of raising doubts about the fundamental fairness of Petitioner's trial and conviction. As the SJC wrote in Petitioner's state court appeal, there is no evidence fairly raising a version of events where Eason was struck down by an errant bullet aimed at Santos. Indeed, there was substantial evidence to the contrary, including the shell casings found on Hancock

Street, the surveillance footage showing that Eason was on Hancock Street (and not Bird Street) when he grabbed his back where he suffered the fatal wound, and that Eason was found dead a "short distance along Bird Street after rounding the corner from Hancock Street." Pina, 481 Mass. at 421.[5]  Moreover, even if the court were to assume that Eason was somehow also struck by a bullet that Petitioner fired at Santos—a proposition unsupported by the factual record—this would not be enough to call the fundamental fairness of Petitioner's conviction into question where the jury could have properly determined that the shots that Petitioner fired at Eason while Petitioner chased Eason down Hancock Street were the proximate cause of Eason's death. See Pina, 481 Mass. at 421 (citing Com. v. Perry, 432 Mass. 214, 225, 733 N.E.2d 83 (2000) ("Where a defendant causes injury which, along with other contributing factors or medical sequella of the injury, leads to death, jurors may determine that the defendant's acts were the proximate cause of the injury")).

    c.   Ground Three: Photo Identification

Petitioner's final argument is that the trial court improperly admitted, over Petitioner's objection, testimony from a Boston Police Detective (Detective Wyse) identifying Petitioner as the individual depicted in two surveillance videos. Pet'r's Mem. 8 [#18]. Namely, Petitioner argues that Detective Wyse's lay testimony identifying Petitioner as the individual in the

---

[5] In his Memorandum 5 [#18], Petitioner points to a spent bullet found at the Floyd Williams Funeral Home, which is located approximately at the intersection of Columbia Road and Bird Street. See also S.A. Ex. 10, 91:4–11 [#12-10] (ballistics expert testifying that detectives recovered several spent bullets associated with the gun used to shoot Eason and Monteiro, including one from the Floyd Williams Funeral Home). This evidence opens up the possibility that, as Eason was rounding the corner from Hancock Street onto Bird Street, Petitioner may have continued shooting at him before running up Jerome Street; it does not make more likely that Petitioner's shots at Santos a block up Jerome Street resulted in an errant bullet hitting Eason on Bird Street.

surveillance videos carried little probative value (as identification is squarely the province of the jury while), while at the same time being particularly prejudicial since identification by a police officer may suggest to the jury that Petitioner was a person of increased scrutiny. Id. at 8–9 (citing Com. v. Pleas, 49 Mass. App. Ct. 321, 327, 729 N.E.2d 642, 647 (2000) ("Identification testimony from a police officer who is so designated increases the potential for inappropriate prejudice to the defendant."); United States v. Butcher, 557 F.2d 666, 669 (9th Cir. 1977) ("the use of the identifications by the police officers, while constitutionally permissible, did increase the possibility of prejudice to the defendant in that he was presented as a person subject to a certain degree of police scrutiny.")). Thus, Petitioner argues, Detective Wyse's testimony should have been excluded under Mass. R. Evid. 403.

As with Petitioner's challenge to the jury instructions discussed in the previous section, a federal habeas court is not a forum for challenging erroneous evidentiary rulings. See Coningford v. Rhode Island, 640 F.3d 478, 484 n.4 (1st Cir. 2011) ("[A]n error of state law, without more, is not enough to warrant federal habeas relief.") (citation omitted). Instead, to the extent that Petitioner contends that the identification testimony should have been excluded, his only potential claim for habeas relief is not that the admission was improper under the state rules, but that the evidence admitted resulted in a fundamentally unfair trial that violated his right to due process. See id. (citing Montana v. Egelhoff, 518 U.S. 37, 43 (1996); Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir.2005)). In the case of identification testimony "[d]ue process demands that evidence be excluded from a criminal trial only when the identification procedure employed was so impermissibly suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." Cooper v. Bergeron, 778 F.3d 294, 300 (1st Cir. 2015) (citing Neil v. Biggers, 409 U.S. 188, 198 (1972)).

Here, Detective Wyse's identification testimony does not give rise to due process concerns. As the SJC wrote in its opinion, any improper inference that may have followed Wyse's identification could not have been prejudicial, much less created a likelihood of irreparable misidentification, where (1) two other witnesses identified the Petitioner as the individual in the surveillance footage walking into the bar; (2) the bar owner identified the Petitioner as the person depicted in the surveillance footage being removed from the bar after the fight in the restroom; and (3) a fourth witness identified the Petitioner as the individual who took (from his codefendant) the gun that was used to shoot Easton and Monteiro. See Pina, 481 Mass. at 430. Accordingly, the court finds that even if Petitioner could show that Detective Wyse's identification testimony was improperly admitted under Massachusetts state law, its admission fails to raise doubts about the fundamental fairness of Petitioner's trial and conviction.

IV.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus [#1] is DENIED.

IT IS SO ORDERED.

Date: September 2, 2021                                          /s/ Indira Talwani
                                                                United States District Judge